Mr. Norman L. Hodges, Jr. Director Arkansas State Claims Commission State Capitol Building Little Rock, Arkansas 72201
Dear Mr. Hodges:
This Opinion is written in response to your request for advice concerning provisions of Act 960 of 1987 and the State Auditor's interpretation of same.
Act 960 of 1987 appropriates money to various State agencies against which judicial awards have been granted by the Claims Commission.
According to your letter, you approached the Auditor's office on July 21, 1987, one day after Act 960 had taken effect, and requested that warrants for payment of the awards be given to you. This request was denied based upon the fact that you were not listed as a person authorized to receive warrants for the agencies against which those warrants were drawn.
Based upon this situation, you ask:
 1) Is there a statute or statutes requiring the Auditor's office to have a signature, either of a disbursing officer or those persons authorized to receive warrants for an agency, on file before warrants will be released;
 2) If there is such a statute or statutes does it or they supercede the July 20, 1987, effective date of Act 960 and the language contained in Section 20 thereof;
 3) Is there an administrative regulation which requires the Auditor's office to have disbursing officers or other signatures on file;
 4) If there is such an administrative regulation is not it inferior in standing to the language of Section 20 of Act 960;
 5) If there is an internal office regulation/procedure requiring such signatures is it not inferior in standing to the language of Section 20 of Act 960;
 6) Did not Mr. Gartman violate the language of Section 20 of Act 960 by releasing warrants prepared under its provisions to unauthorized disbursing agents or others; and
 7) Lastly, while persons other than disbursing officers per se pick up warrants from the Auditor's office under normal procedures, did I not stand alone under the language of Act 960 in my ability to physically receive warrants from the Auditor's office without any signature on record? In short, since the Auditor's office has my signature on record both as a disbursing officer for the Claims Commission and as someone who is authorized to receive warrants whether required by Act 960 or not, should I have been given the warrants for distribution under my signature as Clerk of the Claims Commission?
A detailed list of the duties of the Auditor are found in Ark. Stat. Ann. 12-508 et. seq. (Repl. 1979). Among those duties are to draw all warrants upon the State Treasury for money, to be the general accountant for the State, to keep accurate and detailed statements of expenditures and to enter in a book kept for that purpose each warrant drawn on the treasury in the order in which same was issued, the number and date of the warrant, the name of the person in whose favor drawn and for what drawn. Act 833 of 1979, codified as Ark. Stat. Ann. 13-340 (c) (Repl. 1979) provides that the Auditor of State will maintain a list of all designated agents of disbursing officers with samples of those signatures submitted by the agencies.
The disbursing officers themselves are designated by statute. Ark. Stat. Ann. 13-340 (B). No requirement is contained in the Statute itself as to maintenance of signatures of disbursing officers.
In accordance with this statutory mandate, the Auditor's Office has implemented administrative regulations to enable them to keep accurate records regarding warrants. Among those regulations is one which requires each agency to designate their agency employees entitled to "sign" for the agency's warrants and thus, to receive them on the agency's behalf. See, Attachment "A". This regulation tracks the language of 13-340(c) except it additionally requires disbursing officers themselves to have a signature on file.
Such regulation appears to be reasonably related to the Auditor's statutory duties.
However, Act 960 of 1987, Section 20 specifically states:
 The Clerk of the State Claims Commission is hereby made the disbursing officer for the purpose of paying the claims appropriated by this Act.
In order to address whether the Legislative intended the Claims Commission Clerk's authority to receive warrants pursuant to this language, it must be determined if the term "disbursing officer" encompasses such receipt.
If this is what was intended by the Legislature, then, as a matter of law, Act 960 of 1987 supercedes previous statutory authority and, of course, takes legal precedence over administrative regulations if there exists irreconcilable conflict between the two.
Arkansas's General Accounting Procedure Act, codified as Ark. Stat. Ann. 13-303.1 et. seq. (Repl. 1979) outlines the responsibilities of disbursing officers. Specifically, 13-340 (F) makes such officer responsible for the proper expenditure of funds under his control. The only case found on point defines a disbursing officer as one who is authorized to disburse funds. Romney v. U.S., 167 F.2d 521, 526 (1948).
Given the definition of disbursing officer as one who disburses funds under his control, it is likely the Legislature intended that warrants drawn pursuant to Act 960 be "under the control" of the Clerk of the Claims Commission. This, in this limited circumstance of receipt of warrants specifically authorized by Act 960, the Clerk appears to have been designated as the proper party to obtain the warrants. (Speculation as to legislative intent would be made unnecessary by insertion of specific language in the comparable 1989 Act of the effect that the Clerk of the Claims Commission is additionally authorized to receive the warrants outlined in that Act.)
Specifically, the answer to your questions are as follows:
 1. Arkansas does have a statute requiring the Auditor to have signatures on file of those agency employees designated (other than the disbursing agent to receive warrants for an agency;
 2. No, the latter enacted supercedes if an irreconcilable conflict exists.
 3. The Auditor, by regulation requires signatures of disbursing and acting disbursing officers.
 4. Again, should such regulation be in irreconcilable conflict with or beyond the scope of statutory law, the statute prevails.
5. The answer to this is the same as that to Number 4 above.